U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

MAY 3 0 2019

CLERK, U.S. DISTRICT COURT
By_____
Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

HAROLD MICHAEL MOORE, §
　§
　　　Petitioner, §
　§
v. § No. 4:18-CV-463-A
　§
LORIE DAVIS, Director, §
Texas Department of Criminal §
Justice, Correctional §
Institutions Division, §
　§
　　　Respondent. §

**MEMORANDUM OPINION**
**and**
**ORDER**

This is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner, Harold Michael Moore, a state prisoner confined in the Correctional Institutions Division of the Texas Department of Criminal Justice (TDCJ), against Lorie Davis, director of TDCJ, respondent. After having considered the pleadings, state court records, and relief sought by petitioner, the court has concluded that the petition should be denied.

**I. Factual and Procedural History**

In 2014 petitioner was indicted for felony DWI in Tarrant County, Texas, Case No. 1394673D. (Clerk's R. 5.) The indictment also included a repeat-offender and deadly-weapon-finding notice. (Id.) On October 15, 2015, petitioner entered an open plea of guilty to the offense, a plea of "true" to the repeat-offender notice, and a plea of "not true" to the deadly-weapon-finding

notice. (Id. at 5, 24.) Following a sentencing hearing, the trial court found petitioner guilty, found the repeat-offender notice true, and found that petitioner used a deadly weapon, his motor vehicle, in the course of committing the offense.[1] (Id. at 31, 33.) Petitioner appealed the affirmative deadly-weapon finding and the appellate court sustained the issue, deleted the finding, and affirmed the trial court's judgment as modified. (2d Ct. of App. Op. 19.) Subsequently, the Texas Court of Criminal Appeals (TCCA) reversed the appellate court's judgment and reinstated the original judgment of the trial court. (Tex. Crim. App. Op. 14.) Petitioner then filed a state habeas-corpus application, which the TCCA denied without written order on the findings of the trial court. (SHR[2] 7 & Action Taken.) This federal petition followed.

The facts were summarized by the TCCA as follows:

> In an open plea, [petitioner] pled guilty to the offense of driving while intoxicated, charged as a felony since he had been convicted a number of times previously for that offense. His blood alcohol content shortly after his arrest was .27, almost three and a half times the legal threshold for intoxication. But he pled not true to the allegation that he used a deadly weapon in the course of the offense, and the trial court conducted a punishment hearing without a jury.

---

[1] On the same date in the same court, petitioner also entered an open plea of true for violating various conditions of his community supervision for a 2006 felony-DWI conviction in Case No. 0961033D and was sentenced to 10 years imprisonment. (Clerk's R., No. 0961033D, 77.) The hearing was held on both the new charges in Case No. 1394673D and the motion to revoke his community supervision in Case No. 0961033D.

[2] "SHR" refers to the record of petitioner's state habeas proceeding in WR-88,253-01.

2

> Only one witness testified for the State, Shannon Koen.
>
> Koen was idling in her 2011 BMW sedan, with her foot on the brake, four to five feet behind a white SUV, at a red light on the three-lane service road of Highway 114, where it intersects with Dove Road. There were other cars in the vicinity as well, although Koen was not asked to estimate how many. Koen's fourteen-year-old daughter was also in the car with her. It was a Monday evening, between 6:20 and 6:30 p.m., and already dark. After she had been idling for only "a few seconds or so" waiting for the red light to change, according to Koen, "all of a sudden, there was a huge impact and crash." [Petitioner]'s Mercedes SUV had struck Koen's car from behind, pushing it forward so that it struck the white SUV in front of her, in turn knocking the white SUV out into the intersection. The white SUV was able to proceed through the intersection, and it pulled over to the shoulder with its flashers activated. Koen's airbags never deployed, and nobody was seriously hurt; Koen and her daughter both suffered only a few bruises and scratches, and lingering soreness. But Koen's three-year-old BMW was later declared by an insurance adjuster to be a total loss. On cross-examination, Koen readily admitted that she had not seen [petitioner] coming before his car struck hers. She did not know whether he had been speeding, driving erratically, or failing to obey any other traffic signals before the accident.

(Tex. Crim. App. Op. 2-3 (footnotes omitted).)

## II. Issues

In one ground for relief, petitioner asserts that his "sentence violates his due process rights because he was required to disprove facts not in evidence, an unconstitutional burden shifting," on the issue of the deadly-weapon finding. (Form Pet. 6.)

## III. Rule 5 Statement

Respondent believes that the petition was filed in a timely

3

manner and that petitioner sufficiently exhausted his state-court remedies. (Resp't's Answer 5.)

## IV. Standard of Review

A § 2254 habeas petition is governed by the heightened standard of review provided for by the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. Under the Act, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established federal law as determined by the United States Supreme Court or that is based on an unreasonable determination of the facts in light of the record before the state court. 28 U.S.C. § 2254(d)(1)-(2); *Harrington v. Richter*, 562 U.S. 86, 100-01 (2011).

The statute also requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. A petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *Williams v. Taylor*, 529 U.S. 362, 399 (2000).

Further, when the Texas Court of Criminal Appeals denies a federal claim in a state habeas-corpus application without written opinion, a federal court may presume "that the state

4

court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary" and applied the correct "clearly established federal law" in making its decision. *Johnson v Williams,* 568 U.S. 289, 298 (2013); *Richter,* 562 U.S. at 99; *Schaetzle v. Cockrell,* 343 F.3d 440, 444 (5th Cir. 2004).

**V. Discussion**

*A. Deferential Standard*

As a preliminary matter, petitioner claims that this court should not apply a deferential review of the TCCA's denial of his state habeas application, wherein he raised his federal due-process claim for the first time, because the court did not conduct a merits review of the claim and, instead, denied the application based on the "law of the case" doctrine. (SHR 38-39.)

Under the law-of-the-case doctrine, an appellate court's resolution of a factual or legal issue establishes the "law of the case," *i.e.,* the law controlling any subsequent stages in the case. *See Winfrey v. Rogers,* 901 F.3d 483, 491 (5th Cir. 2018), *cert. denied,* 139 S. Ct. 1549 (2019); *State v. Swearingen,* 424 S.W.3d 32, 36 (Tex. Crim. App. 2014). The Fifth Circuit has noted that the law-of-the-case doctrine, itself, suggests that a subsequent denial on collateral review is a merits adjudication. *See Woodfox v. Cain,* 772 F.3d 358, 370 (5th Cir. 2014), *cert. denied,* 136 S. Ct. 38 (2015). However, even if the law-of-the-

5

case doctrine is inapplicable, as previously noted, the Supreme Court has clarified that when a federal claim has been presented to a state court and the state court denies relief without written opinion, a federal court may presume that the state court adjudicated the claim on the merits, in the absence of any indication or state-law procedural principles to the contrary. *Richter,* 562 U.S. at 99. This presumption applies even where the state court rules against the defendant and issues an opinion that addresses some issues but does not expressly address the federal claim in question or summarily rejects without written opinion all the claims raised by a defendant, including a federal claim that the defendant subsequently presses in a collateral habeas proceeding. *Woodfox,* 772 F.3d at 370.

Applying this rule in the present case, the court finds that the federal claim at issue here (a due-process claim) must be presumed to have been adjudicated on the merits by the TCCA, that this presumption was not adequately rebutted, and that the deferential standard of review set out in § 2254(d)(2) consequently applies.

*B. The Due Process Clause*

On direct appeal, petitioner's sole issue was a challenge to the sufficiency of the evidence to support the deadly-weapon finding. Relying on state law, the TCCA addressed the issue in a published majority opinion, which, although lengthy, is set out

below, in relevant part, to assist the reader.

**THE LAW**

An automobile is not "manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury[.]" But it may, "in the manner of its use or intended use [be] capable of causing death or serious bodily injury." In any felony offense in which it is "shown" that the defendant "used or exhibited [a] deadly weapon[,]" the trial court "shall" enter a deadly weapon finding in the judgment. Such a deadly weapon finding impacts a convicted felon's eligibility for community supervision, parole, and mandatory supervision.

To justify a deadly weapon finding under Section 1.07(a)(17)(B), the State need not establish that the use or intended use of an implement actually caused death or serious bodily injury; only that "the manner" in which it was either used or intended to be used was "capable" of causing death or serious bodily injury. Nor does the plain language of the provision require that the actor actually intend death or serious bodily injury. Our cases that address the question of when and how an automobile may constitute a deadly weapon under Section 1.07(a)(17)(B) appear to be consistent with these general principles.

In *Ex parte McKithan,* 838 S.W.2d 560 (Tex. Crim. App. 1992), we observed in the abstract that "[a] motor vehicle, in the manner of its use or intended use, is clearly capable of causing death or serious bodily injury and therefore can be a deadly weapon." In *Tyra v. State,* 897 S.W.2d 796, 797 (Tex. Crim. App. 1995), the defendant was prosecuted for what we would now call intoxication manslaughter: accidentally or mistakenly causing a death by operating a motor vehicle while intoxicated. He contended that a deadly weapon finding was not warranted because of a lack of evidence that he "actually intended to use an object in such a way as to cause serious bodily injury or death." We rejected that contention, observing that "[t]he statute expressly includes in the definition of deadly weapons those things which are capable of causing death in the manner of their use, not just those things which are manifestly designed to cause death or which will cause death if used as intended." We reached a similar

7

conclusion in *Walker v. State*, 897 S.W.2d 812, 814 (Tex. Crim. App. 1995), holding that "no intent to use the automobile as a weapon need be shown" in a case of involuntary manslaughter. Of course, the motor vehicles in both *Tyra* and *Walker* were obviously capable of causing death—because they did.

In *Mann v. State*, 58 S.W.3d 132 (Tex. Crim. App. 2001), we confronted the question of whether an automobile may be found to constitute a deadly weapon in a felony DWI case in which nobody was injured but the defendant's car "nearly hit another vehicle head-on and . . . a collision was avoided only because the other driver took evasive action." We adopted the lower court's opinion as our own, which had held the evidence sufficient to support a deadly weapon finding in the absence of any evidence that either death or serious bodily injury had actually occurred. The court of appeals had observed, without attribution, that, "[t]o sustain a deadly weapon finding requires evidence that others were endangered, and not merely a hypothetical potential for danger if others had been present." Because near-certain death or serious bodily injury was narrowly averted only because of the other driver's evasive action, we concluded (by adopting the lower court's opinion) that the near-collision sufficed to establish more than a merely hypothetical danger of death or serious bodily injury to another.

We took up *Mann*'s actual-danger requirement in earnest in *Cates v. State*, 102 S.W.3d 735, 738 (Tex. Crim. App. 2003), and *Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005). *Cates* involved a prosecution for failing to stop and render aid after an accident. The defendant's truck struck a pedestrian on a rain-slicked curve in the road on a street in Houston. We focused on the manner of the defendant's driving after the accident, since the "relevant time period" for determining whether he had used a deadly weapon in the course of committing the offense of failure to stop and render aid was "the time period after [the pedestrian] was hit." We held that the evidence did not support a finding that the car in which the defendant left the scene was a deadly weapon, since there was no indication he was speeding, the truck obeyed a traffic light, it never left the roadway, and there was no other traffic on the road. On these facts, we perceived no evidence of actual

8

endangerment in the manner in which the defendant drove during the relevant period of time—after the pedestrian was struck.

In *Drichas,* the defendant was prosecuted for evading detention in a motor vehicle, a felony. This time we found ample evidence to support a deadly weapon finding in that, in the "early morning hours" of the chase, the defendant "disregarded traffic signs and signals, drove erratically, wove between lanes and within lanes, turned abruptly into a construction zone, knocking down barricades as he did so, and drove on the wrong side of the highway." There was at least "'some' traffic . . . present on the road during the chase." We concluded that "the danger was real, . . . particularly where [the defendant] drove on the wrong side of the highway." And we reiterated that "[s]pecific intent to use a motor vehicle as a deadly weapon is not required."

*Sierra v. State,* 280 S.W.3d 250 (Tex. Crim. App. 2009), and *Brister v. State,* 449 S.W.3d 490 (Tex. Crim. App. 2014), each involved a prosecution for felony DWI. In *Sierra,* the defendant T-boned another car that was pulling out of an apartment complex onto a four-lane roadway. We observed that past cases had divided the automobile-as-a-deadly-weapon analysis "into two parts: first, we evaluate the manner in which the defendant used the motor vehicle during the felony; and second, we consider whether, during the felony, the motor vehicle was capable of causing death or serious bodily injury." In evaluating the manner of use, we said, we have asked "whether a defendant's driving was reckless or dangerous during the commission of a felony." We concluded that there was evidence of reckless or dangerous driving in that the defendant had been speeding, and had failed to apply his breaks or otherwise control his vehicle prior to the collision. And because the driver of the broad-sided car was in fact seriously injured in the crash, the evidence established that the defendant's car was capable of causing such injury.

By contrast, nobody was injured in *Brister.* The defendant was pulled over without incident by a police officer who had observed him cross once—but only once—over the yellow line into the on-coming lane on a two-lane road. There were "[v]ery few, if any, cars on

9

the roadway." We upheld the lower court's determination that these bare facts were insufficient to establish that the defendant "caused another vehicle or person to be in actual danger." Of course, *Brister* did not turn exclusively on the fact that nobody suffered actual death or serious bodily injury. Evidence that the defendant in *Brister* drove in a reckless or dangerous manner was skimpy, and the possibility that another motorist could have been hurt was slight. That said, we know from the holding in *Mann* that an automobile may be found to be a deadly weapon in a felony DWI case, even in the absence of any injury at all. The court of appeals' holding in the instant case nevertheless relied heavily on the fact that the injuries [petitioner] actually caused were relatively minor.

## THE COURT OF APPEALS' OPINION

The only issue [petitioner] raised in the court of appeals was the legal sufficiency of the evidence to support the trial court's finding that he used a deadly weapon in the commission of his felony DWI offense. [Petitioner] argued (1) that the evidence failed to establish that the manner in which he had been driving before the accident was reckless or dangerous, and (2) that it also failed to demonstrate that anyone was ever placed in any genuine danger of death or serious bodily injury—that the danger was merely hypothetical, not actual. The court of appeals agreed on both counts.

### The Manner of [Petitioner]'s Use of the Car

The court of appeals analyzed the first question, whether the manner of [petitioner]'s driving was reckless or dangerous, in accordance with the framework it had previously adopted in *Cook v. State,* 328 S.W.3d 95, 100 (Tex. App.—Fort Worth 2010, pet. ref'd). In *Cook,* the same court of appeals had identified five "factors" to consider: "(1) intoxication, (2) speeding, (3) disregarding traffic signs and signals, (4) driving erratically, and (5) failure to control the vehicle." Addressing these factors one at a time, the court of appeals noted first that [petitioner]'s intoxication, while evidence of his "condition" at the time of the offense, "does not describe the manner in which he drove his vehicle." There was no evidence that [petitioner] was speeding, or expert testimony of how fast he would have to have been driving to cause the

10

damage he did to the BMW and impel the white SUV into the intersection. Although [petitioner] obviously disregarded the red light, the court of appeals emphasized that this was but "a single infraction." "We are not prepared to say a single failure to regard a traffic sign or signal, without more information, constitutes a reckless manner of the defendant's use of the vehicle." As for "erratic" driving, the court of appeals remarked that the word connotes a certain consistency of conduct, and that "[w]e have no evidence that the collision was the last in a series of driving irregularities." And regarding [petitioner]'s failure to control his vehicle, the court of appeals cited the paucity of testimony with respect to the contributing causes of the accident, noting a lack of evidence in this case "from which the fact-finder could have concluded the accident was the product of recklessness as distinguished from criminal negligence."

Because, under *Sierra,* the manner of a defendant's use of his automobile may still support a deadly weapon finding if it was not just reckless, but, alternatively, "dangerous," the court of appeals turned briefly to that question. Finding that its analysis of whether [petitioner]'s driving was dangerous "dovetails" with the question of whether it actually put other people in danger of death or serious bodily injury, however, the court of appeals then simply proceeded to address [petitioner]'s second argument: that the evidence failed to prove that he placed others in actual, as opposed to merely hypothetical, danger.

### Actual Versus Hypothetical Danger

The court of appeals observed that "[t]here is no doubt that the failure to stop at a stop light can cause death." "Those, however," the court of appeals maintained, "are not our facts." The facts here showed that Koen and her daughter were indeed "endangered," in the court of appeals' view, but the evidence did not show they were ever put in danger of death or serious bodily injury. "Arguments that the danger was greater and that the injuries could have been or should have been greater are speculation," the court of appeals reasoned, "and speculation is not proof beyond a reasonable doubt." "The scope of the danger is known—bodily injury, not death or serious bodily injury. Any other danger would be hypothetical based on

facts not present here." From these premises, the court of appeals concluded: "To uphold the [deadly weapon] finding on this record would effectively be holding that evidence of a rear-end collision, by itself, establishes in every case that a vehicle was used as a deadly weapon." Accordingly, it ordered that the finding be deleted from the judgment.

We think that the court of appeals in this case focused too acutely on what was not in evidence and not enough on the reasonable inferences a fact-finder could have drawn from what was.

## ANALYSIS

In *Mann,* there was scant evidence of the manner of the defendant's driving before he was pulled over. The arresting officer observed the defendant first drive briefly up onto the curb, and then continue driving in a straight line through a gentle curve in the roadway, nearly causing a head-on collision. We nevertheless adopted the Austin Court of Appeals' conclusion that the deadly weapon finding was "sound." The facts of the instant case are in some ways even more compelling than those that we found readily supportive of the deadly weapon finding in *Mann.*

It is true that there are many things that the record in this case does not reveal. We do not know precisely how fast [petitioner] was driving his SUV before he struck Koen's BMW. Neither can we tell what the manner of [petitioner]'s driving had been even seconds before the accident. We do not know for sure that he altogether failed to apply his brakes before the collision. Other than the BMW and the white SUV, we do not know for certain how many "other cars" were in the vicinity (though we know there were some). For all of that, this is not a case in which, in order to find sufficient evidence of a deadly weapon, we must infer reckless or dangerous driving from the unadorned fact that [petitioner] rear-ended another vehicle, as the court of appeals believed. This record reveals far more potential for danger than that.

[Petitioner] was driving his car in a state of intoxication that was almost three-and-a-half times the legal limit. The collision occurred at 6:30 p.m. on a Monday, at a red light on the service road of a

12

highway. While we know nothing of the manner of
[petitioner]'s driving prior to his causing the
accident, we can infer that he was going fast enough
that the impact caused a chain reaction of collisions
that ultimately pushed the white SUV into the
intersection, and at a time when cars in the
intersecting roadway had the right-of-way. A fact
finder could readily find that there was an actual
danger that the white SUV would be broad-sided, much
like the other driver's car was in *Sierra*. [Petitioner]
evidently either failed to apply his brakes altogether,
or applied them too late to avoid a substantial
impact—even as he approached an intersection with a red
light and at least two cars idling in the lane in front
of him. A rational fact-finder might even infer from
these circumstances that, had there been no cars idling
at the red light on the service road to halt
[petitioner]'s momentum, he might have been unable to
stop, with the very real potential for colliding with
another car moving across the intersection.

    We conclude that a rational fact-finder could
infer that [petitioner] was using his motor vehicle in
this case in a manner that was capable of causing death
or serious bodily injury, even though it did not do so,
and regardless of whether he intended it to. It does
not amount to speculation for us to conclude that there
was more than "a hypothetical potential for danger if
others had been present." Here, others were present,
including the driver of the white SUV, and the manner
in which [petitioner] used his motor vehicle placed
those others in substantial danger of death or serious
bodily injury, even if none of them was actually
seriously hurt. While there is no evidence of a
potential collision quite as devastating as the head-on
near-miss in *Mann,* the danger of such a dire collision
is evident on the facts of this case. The court of
appeals should not have concluded otherwise.

(Tex. Crim. App. Op. 3-14 (all other citations omitted).)

In his state habeas application that followed, petitioner

claimed that the TCCA's decision violated his right to due

process by improperly shifting the burden to him to "prove the

absence of evidence to support a deadly-weapon finding." (SHR 7.)

13

In this federal petition, he asserts that the absence of such evidence effectively shifted the burden of proof to him "to disprove facts not in evidence but hypothesized by the court to support the deadly weapon finding." (Id.; Pet. 6; Dissenting Op., Walker, J.)

The Due Process Clause requires the state to prove all of the elements of the charged offense beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 364 (1970). Conversely, the Due Process Clause prohibits requiring an accused to disprove an element of the offense charged. *Mullaney v. Wilbur,* 421 U.S. 684, 704 (1975). The problem with petitioner's reasoning is that he cannot establish a due-process violation because an affirmative deadly-weapon finding is not an element of the offense for which he was charged. *See Ables v. Scott,* 73 F.3d 591, 593 (5th Cir. 1996). The principle in *In re Winship* does not preclude the trier of fact from drawing reasonable inferences from the proven facts as it feels are justified in the light of common sense and experience. *United States v. Yeatts,* 639 F.2d 1186 (5th Cir. 1981). Nor did the affirmative finding increase the range or degree of his punishment. *See id.* Petitioner acknowledges that an affirmative finding is significant in his case only because it has a negative impact on his eligibility for parole. (Pet. 9.) *See Sierra v. State,* 280 S.W.3d 250, 254 (Tex. Crim. App. 2009); *Grettenberg v. State,* 790 S.W.2d 613 (Tex. Crim. App. 1990).

14

Deferring to the state court's interpretation of "use" under Texas law, the trier of fact, the trial judge, made reasonable inferences from the evidence admitted, which did not amount to an improper shifting of the burden of proof. Contrary to petitioner's assertion, the ultimate burden of proof remained on the prosecution.

For the reasons discussed herein,

The court ORDERS that the petition of petitioner for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby, denied. The court further ORDERS that a certificate of appealability be, and is hereby, denied.

SIGNED May 30, 2019.

/s/ John McBryde
JOHN MCBRYDE
UNITED STATES DISTRICT JUDGE